CLIFFORD W. YOUNG *v.* KAROLINA YOUNG
(AC 28844)

Flynn, C. J., and Lavine and Hennessy, Js.

Argued October 21, 2008—officially released January 13, 2009

*Francis A. Teodosio*, for the appellant (plaintiff).

*Robert S. Reger*, for the appellee (defendant).

*Opinion*

FLYNN, C. J. The plaintiff, Clifford W. Young, appeals from the judgment of the trial court in favor of the defendant, Karolina Young, rendered after a trial to the court. On appeal, the plaintiff claims that the court improperly (1) found that the defendant had never quitclaimed to the plaintiff her interest in a property owned jointly by the parties, (2) failed to render judgment quieting title to the property in the plaintiff and (3) held that the plaintiff had not established a claim of title to the property via adverse possession. We affirm the judgment of the court.

The following facts are relevant to our resolution of the plaintiff's appeal. The plaintiff and the defendant were married in 1957. At the time the defendant initiated dissolution proceedings in 1977, the parties owned jointly four properties: two in Shelton, Connecticut, and two in New Mexico. The court's judgment of dissolution, rendered November 2, 1977, ordered the plaintiff and the defendant immediately to list for sale the Connecticut properties known as 67 Lynne Terrace, which was the marital residence, and lot 27 Cynthia Lane.

Proceeds from the sales were to be divided equally between the parties. The court also ordered the plaintiff to quitclaim his interest in one of the New Mexico properties to the defendant and the defendant likewise to quitclaim her interest in the other New Mexico property to the plaintiff. The order further required the plaintiff to pay to the defendant $3800 in exchange for the defendant's release of her interest in a mutual fund.

The obligations of the parties were further set forth in a handwritten agreement, executed by the plaintiff and the defendant at the time of the dissolution. This agreement, though not disputed by the parties, was not incorporated into the dissolution judgment. The agreement provided that the Cynthia Lane property was to be sold for not less than $20,000. The agreement further required the plaintiff to loan the defendant a sum that would allow the defendant to obtain the amount of $20,000.[1] As to the Lynne Terrace property, the agreement set a sales price of $55,000 and afforded each party a right of first refusal, to be exercised within ten days. The plaintiff was to vacate the property immediately, and the defendant was to vacate in ten days, at which time, the plaintiff would resume occupancy. The plaintiff was to pay the mortgage, taxes and insurance until the sale. Net proceeds from the sale of the property were to be divided equally between the parties.

Following entry of the dissolution judgment, the plaintiff eventually resumed residence at the Lynne Terrace property, while the defendant purchased a condominium. The sale of the Cynthia Lane property realized $27,000, from which the parties each received approximately $13,487. The Lynne Terrace property, however, was never sold, and the plaintiff continued to reside

---

[1] The agreement provided in relevant part: "Real estate at Cynthia Lane to be sold for . . . not less than $20,000. The proceeds will be split equally. However, the [husband] will loan sufficient funds of the proceeds to permit [the wife] to obtain $20,000 from the proceeds."

there, while the defendant eventually moved to Georgia. From 1977 onward, the plaintiff paid the mortgage, taxes, insurance and provided for the general upkeep of the property. The defendant made no such contributions.

In August, 2003, the plaintiff contacted the defendant and informed her that the Lynne Terrace property had been burglarized. Among the items stolen, according to the plaintiff, was a quitclaim deed to the Lynne Terrace property executed by the defendant in favor of the plaintiff. The quitclaim deed had never been recorded on the Shelton land records. The plaintiff requested that the defendant send him a new deed to replace the allegedly stolen deed. Upon the defendant's refusal, the plaintiff initiated the underlying action.

By way of his revised complaint, filed November 18, 2005, the plaintiff sought to quiet title to the Lynne Terrace property pursuant to General Statutes § 47-31. The complaint also contained a claim that the plaintiff had acquired title to the property by adverse possession.[2] The defendant filed an answer, special defense and counterclaim in which she sought a partition of the interests of the parties in the property, a sale of the property and division of the proceeds between the parties, and a monetary award of compensation for the plaintiff's use and occupancy of the property since 1977.

The matter was tried before the court on November 15 and 16, 2006. The plaintiff testified that on December 2, 1977, he delivered a check in the amount of $10,200 to attorney Richard Lynch. The plaintiff indicated that these funds constituted payment for the defendant's

---

[2] In addition, the revised complaint included a third count in which the plaintiff claimed that the defendant had "abandoned all her right, title and interest" in the Lynne Terrace property. The court struck this count on August 7, 2006. The count was not repleaded and is not a subject of the present appeal.

interest in the Lynne Terrace property and that, in exchange for the sum, he had received a quitclaim deed for that property executed by the defendant. The plaintiff testified that Lynch required him to execute a quitclaim deed to the New Mexico property at that time. The plaintiff stated that he first realized the quitclaim deed to the 67 Lynne Terrace residence had never been recorded after his house was burglarized and he inquired about the deed at Shelton city hall.

The plaintiff also testified that in 1982, he received a telephone call from Lynch indicating that Lynch had misplaced the quitclaim deed to one of the New Mexico properties that the plaintiff had executed in favor of the defendant. The plaintiff entered into evidence a letter from Lynch dated October 19, 1982, in which Lynch asked the plaintiff to execute a quitclaim deed to the New Mexico property. Lynch wrote that he was anxious to close the file and was "unable to do so until the court order is fully complied with."

Besides his testimony, the plaintiff offered into evidence a copy of a cashier's check in the amount of $10,200 made out to the defendant. A notation on the check read: "Re: Clifford Young Payment for final settlement." The plaintiff also offered a ledger entry he claimed to have made documenting his payment. The entry read: "Buy out Karla [the defendant] half interest in house. Rec [Quit] Claim Deeds for house and NM property. Payment for final settlement." The plaintiff's current wife, Shirley Steeves-Young, testified that she had seen the quitclaim deed before it had been stolen, though she admitted that she had not read the deed's property description. In addition, upon the plaintiff's request, the court took judicial notice of financial affidavits the parties had submitted to the court in October, 1979. The Lynne Terrace property was listed as an asset on the plaintiff's affidavit but not on the defendant's.

The defendant testified that she had never executed a quitclaim deed to the Lynne Terrace property. She explained that, following the dissolution of the parties' marriage, and pursuant to the agreement executed by the parties, she moved out of the marital residence and into a condominium. The defendant testified that the $10,200 transfer from the plaintiff represented the defendant's $3800 interest in the mutual fund, referenced in both the dissolution order and the agreement, plus a loan from the plaintiff, provided for by the agreement, to allow the defendant to purchase the condominium. The defendant further testified that she never attempted to force the sale of the Lynne Terrace property because she could not afford an attorney at the time, and that she intended that her interest in the property pass to her children upon her death. The defendant also testified that the property did not appear on her 1979 financial affidavit because she believed the property was in the process of being sold, and, therefore, did not need to be listed.

By memorandum of decision filed May 4, 2007, the court ruled in favor of the defendant on both counts of the complaint. The court concluded that the defendant had never transferred her interest in the Lynne Terrace property and, therefore, remained the owner of a one-half interest in the property. The court held that the plaintiff's adverse possession claim failed because the defendant had left the property by agreement of the parties and that the plaintiff's continued occupancy was not hostile to the defendant's rights but instead was by her consent. As to the defendant's counterclaim, the court held that the plaintiff's expenditures in maintaining the property offset any claim the defendant could make for use and occupancy. Considering the conflicting interests of the parties, the court ordered the property sold and proceeds divided

according to the original dissolution judgment of November 2, 1977. The plaintiff's appeal followed.

I

The plaintiff first claims that the court improperly determined that the defendant had never quitclaimed her interest in the Lynne Terrace property to the plaintiff. Although the plaintiff concedes that "there is evidence to support the trial court's conclusion that a quitclaim deed was never executed," he argues that the court's finding was incorrect "in light of all the evidence in the record . . . ."

We begin with the applicable standard of review. "We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Seligson* v. *Brower*, 109 Conn. App. 749, 753–54, 952 A.2d 1274 (2008).

In support of his claim, the plaintiff highlights various portions of the evidentiary record and argues that they support his version of the events, namely, that the defendant quitclaimed the Lynne Terrace property to him in 1977. The plaintiff cites the 1979 financial affidavits and argues that if the defendant believed she owned an interest in the property, she would have included it in her affidavit. The plaintiff contends that the fact that Lynch did not mention the Lynne Terrace property in his 1982 letter to the plaintiff indicates that the order to sell the property had already been effectuated. The

plaintiff also maintains that his testimony and the evidence of his actions following the dissolution support his claim that the quitclaim deed in fact had been executed. Finally, the plaintiff refers to Steeves-Young's testimony that she saw the quitclaim deed. In light of this evidence, the plaintiff argues, the court's finding that the defendant never executed a quitclaim deed was clearly erroneous. We are unpersuaded.

The plaintiff is correct to the extent that the evidence he underscores could be judged to support his claim that a quitclaim deed had been executed and the defendant's interest in the property transferred to him. However, the evidence was not so strong as to foreclose any other conclusion. Outside of the testimony of the plaintiff and Steeves-Young, there was no direct evidence that the quitclaim deed ever existed. No other witness testified to this effect, and there was no documentary evidence, such as a photocopy of the deed or any evidence that the deed had ever been recorded, to support the plaintiff's claim. In addition, the court had the testimony of the defendant to the effect that she had never executed a quitclaim deed to the property.

The court also was entitled to credit the defendant's explanation for the $10,200 payment from the plaintiff to the defendant and not to credit the plaintiff's contrary explanation. In order to perform its duty, the court had to determine the credibility of the witnesses. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 99, 626 A.2d 1292 (1993). "[W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the

credibility of witnesses . . . ." (Citation omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 322, 796 A.2d 516 (2002). An appellate court cannot decide matters of credibility, as "[c]redibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude." (Internal quotation marks omitted.) *McCarthy* v. *Ward Leonard Electric Co.*, 104 Conn. App. 535, 545, 935 A.2d 189 (2007).

Our thorough review of the record reveals that, although the evidence was in conflict, nonetheless, there was sufficient evidence for the court's conclusion that the defendant never quitclaimed her interest in the Lynne Terrace property to the plaintiff. We therefore conclude that the court's finding was not clearly erroneous.

## II

The plaintiff next claims that the court improperly failed to render judgment quieting title to the Lynne Terrace property in the plaintiff's name. He argues that because his complaint described the property, the manner in which he acquired title to the property and the person claiming an adverse interest in the property, and that the evidence supported his claim, the court should have quieted title in him. We disagree.

General Statutes § 47-31 (a) provides in relevant part: "An action may be brought by any person claiming title to . . . real . . . property . . . against any person who may claim to own the property . . . or to have any interest in the property . . . *adverse to the plaintiff* . . . for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ." (Emphasis added.) A plaintiff seeking to quiet title in a property must "describe the property in question and state the plaintiff's claim, interest or title and the

manner in which the plaintiff acquired the claim, interest or title and shall name the person . . . who may claim the *adverse* estate or interest. . . ." (Emphasis added.) General Statutes § 47-31 (b).

The court properly declined to find in favor of the plaintiff on his quiet title claim. As we have discussed in reviewing the plaintiff's first claim, the record contained sufficient evidence for the court to determine that the defendant never quitclaimed her interest in the property to the plaintiff. The plaintiff's and the defendant's interests in the property, therefore, are not adverse. The parties own the property jointly, as they did at the time of the dissolution of their marriage. The plaintiff, therefore, could not maintain successfully an action to quiet title in the property.

### III

The plaintiff's final claim is that the court improperly held that he had not established a claim of title to the Lynne Terrace property by adverse possession. Specifically, the plaintiff contends that the court incorrectly determined that he occupied the Lynne Terrace property under the agreement of the parties, and, therefore, his occupation was not hostile to the rights of the defendant. We disagree.

"Because adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . [O]nly in rare instances is [an appellate] court justified in holding, as a matter of law, that [adverse possession] has been established. A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court. . . .

"Where title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential

elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. . . . Such a possession is not to be made out by inference, but by clear and convincing proof. . . . The doctrine of adverse possession is to be taken strictly." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 666, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008); see also General Statutes § 52-575.

Again, the record contained sufficient evidence for the court's conclusion that the defendant never quitclaimed her interest in the property to the plaintiff. There was also sufficient evidence from which the court could have concluded that the plaintiff's presence on the property was with the permission of the defendant. The parties' agreement, executed on November 2, 1977, the day the court rendered judgment of dissolution, provided in part: "The [husband] will vacate the property tonight. The [wife] shall vacate the property within 10 days at which time the [husband] shall resume occupancy. [The husband] shall advance mortgage payments including taxes and insurance which shall be credited as an expense of sale." The agreement, therefore, provided a basis for the court to conclude that the plaintiff initially occupied the property with the permission of the defendant. The defendant testified as to her reasons for not earlier forcing a sale of the property, which included her intention that her interest in the property pass to her heirs upon her death. Such testimony was consistent with the conclusion that the plaintiff occupied the property under the agreement.

We conclude that there was ample support in the record for the court's conclusion that the plaintiff's continued occupation of the property was under the agreement of the parties and, thus, with permission of

the defendant. Given this conclusion, the court held correctly that the plaintiff had not established the elements of adverse possession, as he could not prove that the defendant had been ousted from possession or that his continued occupation was without the defendant's consent.

The judgment is affirmed.

In this opinion the other judges concurred.