CLIFFORD YOUNG *v.* KAROLINA YOUNG
(AC 33273)

Bear, Espinosa and Bishop, Js.

---

Argued March 12—officially released August 28, 2012

*Robert S. Reger,* for the appellant (substitute defendant).

*Francis A. Teodosio,* for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Daniel Young,[1] the administrator of the estate of Karolina Young, appeals from a series of postjudgment orders of the trial court. The defendant claims that the court erred when it denied his "motion for order that [the] parties immediately list for sale the real estate subject of this action" and, instead, ordered the property sold to the plaintiff, Clifford Young, subject to certain offsets. In addition, the defendant claims that the court erred in determining that current appraisals, rather than appraisals from the time of the original partition judgment, should be used to value the subject property. We affirm in part and reverse in part the judgment of the trial court.

---

[1] After the named defendant in this action, Karolina Young, died on November 2, 2010, the administrator of her estate, Daniel Young, was substituted as the defendant in this matter by the trial court, *Hiller, J.,* on February 14, 2011. We refer to Daniel Young, in his capacity as the administrator of the estate of Karolina Young, as the defendant and to Karolina Young by name.

This matter previously was before this court. See *Young* v. *Young*, 112 Conn. App. 120, 961 A.2d 1029 (2009). Our earlier opinion set forth the following facts and procedural history, which help frame our present analysis. "The plaintiff and [Karolina Young] were married in 1957. At the time [Karolina Young] initiated dissolution proceedings in 1977, the parties owned jointly four properties: two in Shelton, Connecticut, and two in New Mexico. The court's judgment of dissolution, rendered November 2, 1977, ordered the plaintiff and [Karolina Young] immediately to list for sale the Connecticut properties known as 67 Lynne Terrace, which was the marital residence, and lot 27 Cynthia Lane. Proceeds from the sales were to be divided equally between the parties. . . .

"The obligations of the parties were further set forth in a handwritten agreement, executed by the plaintiff and [Karolina Young] at the time of the dissolution. This agreement, though not disputed by the parties, was not incorporated into the dissolution judgment. . . . As to the Lynne Terrace property, the agreement set a sales price of $55,000 and afforded each party a right of first refusal, to be exercised within ten days. The plaintiff was to vacate the property immediately, and [Karolina Young] was to vacate in ten days, at which time, the plaintiff would resume occupancy. The plaintiff was to pay the mortgage, taxes and insurance until the sale. Net proceeds from the sale of the property were to be divided equally between the parties.

"Following entry of the dissolution judgment, the plaintiff eventually resumed residence at the Lynne Terrace property, while [Karolina Young] purchased a condominium. . . . The Lynne Terrace property, however, was never sold, and the plaintiff continued to reside there, while [Karolina Young] eventually moved to Georgia. From 1977 onward, the plaintiff paid the mortgage, taxes, insurance and provided for the general

upkeep of the property. [Karolina Young] made no such contributions.

"In August, 2003, the plaintiff contacted [Karolina Young] and informed her that the Lynne Terrace property had been burglarized. Among the items stolen, according to the plaintiff, was a quitclaim deed to the Lynne Terrace property executed by [Karolina Young] in favor of the plaintiff. The quitclaim deed had never been recorded on the Shelton land records. The plaintiff requested that [Karolina Young] send him a new deed to replace the allegedly stolen deed. Upon [Karolina Young's] refusal, the plaintiff initiated the underlying action.

"By way of his revised complaint, filed November 18, 2005, the plaintiff sought to quiet title to the Lynne Terrace property pursuant to General Statutes § 47-31. The complaint also contained a claim that the plaintiff had acquired title to the property by adverse possession. [Karolina Young] filed an answer, special defense and counterclaim in which she sought a partition of the interests of the parties in the property, a sale of the property and division of the proceeds between the parties, and a monetary award of compensation for the plaintiff's use and occupancy of the property since 1977.

"The matter was tried before the court on November 15 and 16, 2006. . . .

* * *

"By memorandum of decision filed May 4, 2007, the court ruled in favor of [Karolina Young] on both counts of the complaint. The court concluded that [Karolina Young] had never transferred her interest in the Lynne Terrace property and, therefore, remained the owner of a one-half interest in the property. The court held that the plaintiff's adverse possession claim failed because [Karolina Young] had left the property by agreement of

the parties and that the plaintiff's continued occupancy was not hostile to [Karolina Young's] rights but instead was by her consent. As to [Karolina Young's] counterclaim, the court held that the plaintiff's expenditures in maintaining the property offset any claim [Karolina Young] could make for use and occupancy. Considering the conflicting interests of the parties, the court ordered the property sold and proceeds divided according to the original dissolution judgment of November 2, 1977." *Young* v. *Young,* supra, 112 Conn. App. 121–26.

On May 24, 2007, the plaintiff appealed from the court's May 4, 2007 judgment. Thereafter, the plaintiff filed a motion for articulation, requesting that the court articulate whether he "was to be allowed a credit as ordered in the original judgment of dissolution . . . for all mortgage payments made until the marital residence was sold." On November 27, 2007, the court filed an articulation wherein it responded, "yes," to that question.

On January 13, 2009, this court affirmed the trial court's May, 2007 judgment, concluding that the court properly determined that Karolina Young had never quitclaimed her interest in the Lynne Terrace property to the plaintiff; *Young* v. *Young,* supra, 112 Conn. App. 128; properly declined to render judgment quieting title to that property in the plaintiff's name; id., 129; and correctly held that the plaintiff had not established a claim to title in that property by adverse possession. Id., 131.

On January 22, 2009, the defendant filed a motion for order requiring that the parties list the Lynne Terrace property for immediate sale,[2] and, subsequently, the

---

[2] The motion requested "an appropriate order requiring the parties to list the property for sale, and/or to cooperate in listing the property for sale. [The] [d]efendant also seeks a deadline by which the property must be listed."

plaintiff filed an objection thereto.[3] In addition, on January 29, 2009, the plaintiff filed a motion titled "Motion for Reconsideration and Articulation of Order to Sell." In that motion, the plaintiff requested that the court "further articulate its [2007 judgment]." Noting the expenses associated with a sale, the plaintiff requested that the court "articulate as to whether when it ordered the house sold and the proceeds divided in accordance with the original dissolution judgment, the trial court opined that the plaintiff be or not be entitled to buy the house."

The plaintiff also filed a "Motion for Articulation Re: Taxes," noting that the court "previously held that the plaintiff was to be allowed a credit for mortgage payments made" and seemingly differentiating "mortgage payments from expenses for maintenance." The motion requested that the court "articulate whether it intended a similar offset for taxes paid."

On February 17, 2009, the court, *Hon. George W. Ripley II*, judge trial referee, heard argument on a number of the aforementioned postjudgment motions, including the defendant's motion for an order of sale, the plaintiff's objection thereto and the plaintiff's motion for reconsideration and articulation of the order of sale. At that hearing, the plaintiff's counsel requested that the court allow his client to purchase the defendant's one-half interest in the property. The defendant responded that such request was not "unreasonable" and stated, "[i]f there's an appraisal, and it's done very quickly on a deadline, and we can agree to an appraiser,

[3] The objection provided: "The plaintiff . . . objects to any order to sell [the Lynne Terrace property] unless the order would first include an opportunity for the plaintiff to purchase the premises subject to offsets as provided in the original judgment in [*Young* v. *Young*, Superior Court, Docket No. FA-77-0166122 (November 2, 1977)] and alluded to by the trial court (*Hon. George W. Ripley II*, judge trial referee) in its judgment of May 4, 2007, and its [articulation] dated November 27, 2007."

we'd have to talk about that and get an appraisal, and have him have his funding in place by a deadline, I guess I wouldn't really object to that. He has lived there." The parties then agreed to hire an appraiser and the court suggested that "this whole matter . . . be continued for a sufficient period of time for the appraiser to make his—get to his valuation, and then try to come back into court and we'll try to work out a distribution of the proceeds." After considering an unrelated motion, the court granted the plaintiff's motion for reconsideration and articulation of the order to sell and sustained his objection to the defendant's motion for order of immediate sale. Prior to adjourning the hearing, however, the defendant sought to clarify the extent of the court's orders.

The following colloquy took place:

"[The Defendant's Counsel]: May I just, if Your Honor would allow me to clarify for a moment something? For example, the objection for order for sale of premises, which you sustained, however, the objection itself reads, it reads in part—

\* \* \*

"[The Defendant's Counsel]: If you look at the second—it's a one paragraph objection, and if you look at the second part of the paragraph, it includes language that would allow offsets as provided in the original judgment. I just don't want this to become written in concrete later on. It's my understanding that the distribution of funds is completely unaffected by this order right now.

"The Court: The court is simply ordering the sale of—the appraisal of the property, a determination of value, and an opportunity for the plaintiff to be able to purchase the property. That's all the court is ordering.

"[The Defendant's Counsel]: Thank you.

"[The Plaintiff's Counsel]: I agree, Your Honor. I'm not in any way implying that the court has made any other decision at this point."

Due to issues with arranging an appraisal, the matter did not come before the court again until 2011.[4] Karolina Young died in November, 2010.[5] Additionally, Judge Ripley retired from the bench.

On February 14, 2011, a hearing was held before the court, *Hiller, J.* Throughout the hearing, the parties argued about whether and to what extent the plaintiff should be entitled to an offset against the value of the Lynne Terrace property for mortgage, insurance and tax payments. The defendant argued that the property should be sold pursuant to General Statutes § 52-500[6] and that any offsets or credits should be determined after the sale. The defendant further contended that, pursuant to Judge Ripley's May, 2007 decision, any

---

[4] During that time the parties attempted to get a joint appraisal, but were hampered in their efforts by the conduct of the appraiser they had retained.

[5] See footnote 1 of this opinion.

[6] General Statutes § 52-500 provides: "(a) Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners. If the court determines that one or more of the persons owning such real or personal property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners.

"(b) The provisions of this section shall extend to and include land owned by two or more persons, when the whole or a part of the land is vested in any person for life with remainder to his heirs, general or special, or, on failure of the heirs, to any other person, whether the land, or any part thereof, is held in trust or otherwise. A conveyance made pursuant to a decree ordering a sale of the land shall vest the title in the purchaser thereof, and shall bind the person entitled to the life estate and his legal heirs and any other person having a remainder interest in the lands. The court issuing the decree shall make such order in relation to the investment of the proceeds of the sale as it deems necessary for the security of all persons having any interest in such land."

claim by the plaintiff for offsets related to upkeep of the Lynne Terrace property, including mortgage, tax and insurance payments, was offset by the defendant's countervailing claim for reasonable use and occupancy of the premises. The plaintiff argued that the court's decision at the February, 2009 hearing already determined that the Lynne Terrace property should be sold to the plaintiff and that its articulation of its May, 2007 decision clarified his entitlement to an offset for mortgage payments. The plaintiff further requested that the court determine whether he also would be entitled to offsets for payments of taxes and insurance on the Lynne Terrace property, which he claimed were requested in his motions for reconsideration and articulation, but were not resolved at the February, 2009 hearing.

In response, the court issued the following orders: "[The] court believes that from prior decisions regarding [the plaintiff's motion for articulation of the May, 2007 decision] where the answer for articulation to question number one [asking whether the plaintiff was entitled to a credit for mortgage payments] was yes, [the] plaintiff is to be given a credit for insurance and taxes." The court did not enter any additional orders at this time.

Also at the February, 2011 hearing, the parties presented the court with varying appraisals of the Lynne Terrace property. The parties agreed, on the record, to a value of the Lynne Terrace property of $250,000.

On March 21, 2011, the court, *Hiller, J.*, held yet another hearing in the present matter. At this hearing, the defendant requested that the court enter an order on his original January, 2009 motion for order for immediate sale of the Lynne Terrace property, listing the property for sale. The defendant contended that this

was necessary because the February, 2009 order sustaining the plaintiff's objection to the motion for order was "temporary," contemplating that the parties would return to the court for further proceedings after an appraisal of the Lynne Terrace property was made. The court entered the following order on the defendant's motion: "[The] property will be sold to [the] plaintiff for [a] price of $125,000 less offsets for mortgage, taxes and insurance. That sale will be effectuated within 30 days." This appeal followed.

On appeal, the defendant claims, specifically, that the court erred (1) "when it denied the defendant's motion for order to list the property for sale and ordered the property to be sold to the plaintiff," (2) "in granting the plaintiff's motion for articulation re: taxes," (3) "in granting the plaintiff's [motion] for reconsideration and articulation of order to sell," (4) "in ordering an offset for insurance," (5) "in its interpretation of Judge Ripley's articulation as foreclosing [the] defendant's entitlement to a set off of one-half the reasonable use and occupancy against [the] plaintiff's claims for credit for mortgage payments" and (6) when, "in resorting to the use of appraisals . . . using a current appraisal rather than an appraisal of the real estate as of the date of judgment." Excepting the issue concerning appraisals, the defendant's various claims can be distilled into a single overarching claim that the court, throughout the postjudgment proceedings, improperly interpreted the meaning and effect of the May, 2007 judgment, the articulation of that judgment and this court's affirmance of that judgment.

Accordingly, we will first consider those portions of the court's 2009 and 2011 orders requiring sale of the Lynne Terrace property to the plaintiff subject to offsets for mortgage, tax and insurance payments. We next will consider whether the court properly ordered use of a current appraisal in valuing the Lynne Terrace property.

I

The defendant argues that the court's May, 2007 judgment found for the defendant on the complaint and ordered, pursuant to the defendant's counterclaim, a partition of the parties' interests in the Lynne Terrace property and a sale pursuant to § 52-500. The defendant contends that the May, 2007 judgment was affirmed by this court on appeal, and, thus, it is the law of the case.[7] Therefore, the defendant argues, the court's March, 2011 order denying his motion for order that the parties immediately list the Lynne Terrace property for sale and that the property be sold to the plaintiff was erroneous, because it contradicted the court's May, 2007 judgment.

The plaintiff contends that the May, 2007 decision directed that the property be sold in accordance with the terms of the dissolution judgment. Thus, the plaintiff argues that the effect of the February and March, 2011 orders, providing for sale of the Lynne Terrace property to the plaintiff with offsets for mortgage, tax and insurance payments, merely effectuated the terms of the 1977 dissolution judgment.

Our Supreme Court "has recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment. . . . *Rocque* v. *Light Sources, Inc.*, 275 Conn. 420, 433, 881 A.2d 230 (2005); see also *Commissioner of Health Services* v. *Youth Challenge of*

_____

[7] The defendant argues that the plaintiff's motions for articulation are untimely under Practice Book § 66-5. Although the plaintiff titled a number of his postjudgment motions as motions to "articulate," it is clear from the record that the plaintiff's motions appropriately are construed as motions to clarify the court's prior judgments and were thus timely filed. See, e.g., *Mickey* v. *Mickey*, 292 Conn. 597, 604–605, 974 A.2d 641 (2009) ("[M]otions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper. . . . There is no time restriction imposed on the filing of a motion for clarification." [Internal quotation marks omitted.]).

*Greater Hartford, Inc.*, 219 Conn. 657, 670, 594 A.2d 958 (1991) ([c]ourts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment)." (Internal quotation marks omitted.) *Episcopal Church in the Diocese of Connecticut* v. *Gauss*, 302 Conn. 408, 457, 28 A.3d 302 (2011). Moreover, "[t]he trial court has jurisdiction to clarify an ambiguous judgment at any time." *Sosin* v. *Sosin*, 300 Conn. 205, 218, 14 A.3d 307 (2011).

"Because [t]he construction of [an order or] judgment is a question of law for the court . . . our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Santoro* v. *Santoro*, 132 Conn. App. 41, 46, 31 A.3d 62 (2011).

The confusion in the present matter results, in part, from the interplay of two separate judgments: the court's 1977 judgment of dissolution and the court's May, 2007 judgment in the present quiet title matter. The 1977 judgment of dissolution provides in relevant part: "[T]he parties shall immediately list the real estate known as 67 Lynne Terrace, Shelton . . . for sale. . . . The net proceeds of the sale of 67 Lynne Terrace, Shelton, shall be divided equally between the parties after first reimbursing the defendant for payments made towards mortgage and taxes between this date and the date of the closing." The 1977 handwritten agreement between the parties, which was not incorporated into the judgment of dissolution, provides in relevant part:

"The parties agree to list the family residence at Lynne Terrace to obtain a Fair Market Value of $55,000.00. Each party will have a right of first refusal to be exercised within 10 days. The parties will use [Attorney] Richard Lynch. The defendant will vacate the property tonight. The plaintiff shall vacate the property within 10 days at which time the defendant shall resume occupancy. Defendant husband shall advance mortgage payments including taxes and insurance which shall be credited as an expense of sale. After the mortgage credit, the payment of expenses of sale, the net proceeds shall be divided equally. Rental proceeds shall be credited equally."[8]

Nothing in the 1977 dissolution or the handwritten agreement between the parties explicitly provides that the property must be sold directly to the plaintiff. Rather, the handwritten agreement provides that either party is entitled to a right of first refusal.[9] Moreover, both the dissolution judgment and the handwritten agreement provide that the property is to be listed for sale.

Turning to the May, 2007 quiet title judgment, the court ordered the parties "to forthwith list the property

[8] Although not incorporated in the judgment of dissolution, we refer to the parties' handwritten agreement in our interpretation of that judgment. See, e.g., *Nelson* v. *Nelson*, 13 Conn. App. 355, 358–59, 536 A.2d 985 (1988). As our previous opinion in this matter notes, the parties do not dispute the existence or terms of their agreement. *Young* v. *Young*, supra, 112 Conn. App. 122.

[9] The provision of a right of first refusal in the handwritten agreement is instructive, in that it evinced the intent of the parties that the Lynne Terrace property first was to be offered for sale to third parties. See, e.g., *Briggs* v. *Sylvestri*, 49 Conn. App. 297, 303–304, 714 A.2d 56 (1998) ("[A] right of first refusal . . . [is] conditioned on the occurrence of two events: [the property owner's] desire to sell the property, and [his] receipt of an acceptable offer from a bona fide purchaser. . . . This right merely requires the property owner, before it [sells] the [property] to some third party, to offer it to [the holder of the right] on the same terms it [is] willing to accept from the third party." [Citation omitted; internal quotation marks omitted.]).

for sale and to divide the proceeds as specified in the [1977 dissolution] judgment entered by the court," in other words, to list the property for public sale. Neither judgment contains any order for a private sale of the Lynne Terrace property to the plaintiff, although the court could have done so pursuant to § 52-500. See *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 852–53, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

Accordingly, that portion of the court's March, 2011 order providing for immediate sale of the Lynne Terrace property to the plaintiff was improper, as it contravened the unambiguous terms of the May, 2007 judgment and, in addition, modified the terms of the 1977 judgment of dissolution. See *Sosin* v. *Sosin*, supra, 300 Conn. 218 ("[t]he trial court has no jurisdiction [however] to open a judgment and [to] affect the property assignment [in a marital dissolution action] except within four months after the original judgment" [internal quotation marks omitted]); see also General Statutes § 52-212a. Nothing in the 1977 judgment of dissolution or the May, 2007 judgment requires that the property be sold directly to the plaintiff for a sum certain. On the contrary, both the May, 2007 judgment and the 1977 judgment of dissolution provide that the property is to be listed for public sale.

Aside from the order of sale to the plaintiff, the defendant also claims that the court erred when it granted the plaintiff an offset for tax, insurance and mortgage payments made on the Lynne Terrace property. Specifically, the defendant contends that the May, 2007 judgment provided that the plaintiff's claim for an offset of mortgage, tax and insurance payments was, itself, offset by the defendant's countervailing claim for use and occupancy. The defendant further claims that the court improperly interpreted Judge Ripley's 2007 articulation "as foreclosing [the] defendant's entitlement to a setoff

of one-half the reasonable use and occupancy against [the] plaintiff's claims for credit for mortgage payments."

The plaintiff contends that the court's postjudgment orders providing offsets for mortgage, tax and insurance payments effectuated the terms of the 1977 dissolution and, therefore, were proper. That is, the plaintiff argues that the 1977 dissolution judgment explicitly provided for him to be paid offsets for his mortgage, tax and insurance payments from the gross proceeds of the sale prior to the division of the net proceeds between him and the defendant. The plaintiff contends that when the court stated, in its May, 2007 judgment, that the defendant's entitlement to use and occupancy payments was to be offset by the plaintiff's expenditures to maintain the Lynne Terrace property, the court was referring only to costs related to repairs and maintenance—such as the resurfacing of a driveway or the installation of a septic tank—not to mortgage, tax and insurance payments for which he claimed a credit. According to the plaintiff's reading of the May, 2007 judgment, which he claims is supported by the court's articulation stating that he is entitled to a credit for mortgage payments, the court's statement that the proceeds of sale shall be divided pursuant to the terms of the 1977 dissolution judgment permits the plaintiff to deduct offsets for mortgage, tax and insurance payments from the gross proceeds of sale prior to the division of the net proceeds. We disagree with the plaintiff's reading of the court's May, 2007 judgment.

With regard to offsets, the May, 2007 judgment provides in relevant part: "As to the defendant's claim for compensation for the plaintiff's use and occupancy, the plaintiff testified that he has met all the expenses for the upkeep of the premises including any mortgage payments, household repairs and grounds maintenance and taxes. It appears to the court without resorting to

an accounting that any claim by the defendant for use and occupancy is offset by the evidence of the plaintiff's expenditures to maintain the property."

This language clearly implies that the court intended that the plaintiff's use and occupancy obligation owed to the defendant with regard to the Lynne Terrace property be offset against the moneys he paid for expenses related to the property. See *Ottiano* v. *Shetucket Plumbing Supply Co.*, 61 Conn. App. 648, 652, 767 A.2d 128 (2001) (when interpreting judgment, effect must be given to that which is implied as well as that which is expressed). Moreover, in ordering a public sale pursuant to § 52-500, it is apparent that the court considered the plaintiff's various expenditures related to the "upkeep" of the Lynne Terrace property, including "any mortgage payments, household repairs and grounds maintenance and taxes." We are not persuaded by the plaintiff's argument that the court's statement "that any claim by the defendant for use and occupancy is offset by the evidence of the plaintiff's expenditures to maintain the property" implies that the court was balancing only the plaintiff's expenditures related to maintenance, in a strict rather than general sense of the term, thus excluding mortgage, tax and insurance payments, against the defendant's entitlement to use and occupancy. Rather, taken in context, we determine that the court's reference to "expenditures to maintain the property," properly includes expenditures for the "upkeep" of the Lynne Terrace property, including mortgage payments, taxes and insurance. We arrive at this conclusion noting that, under common usage, the terms "maintenance" and "upkeep" are synonymous.[10]

[10] Upkeep is defined as "the act of maintaining in good condition . . . ." Webster's Third New International Dictionary (2002). Maintenance is defined as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency . . . ." Id.

"[A] partition action requires that the court balance the equities between the parties." *Rissolo* v. *Betts Island Oyster Farms, LLC,* 117 Conn. App. 344, 353, 979 A.2d 534 (2009). Based on our review of the May, 2007 judgment, it is apparent that the court balanced the plaintiff's out-of-pocket expenditures for maintenance, or upkeep, of the entire Lynne Terrace property against the defendant's countervailing interest in reasonable use and occupancy payments. The end result of that equitable balancing was that the competing financial interests of the parties canceled one another out, and the court thus ordered that the net proceeds of the public sale of the real property be divided equally, in accordance with the division provided in the 1977 judgment of dissolution.[11] Accordingly, we reverse the trial court's order requiring a private sale of the defendant's interest in the real property to the plaintiff.

This does not end our inquiry, however, because the defendant contests not only the court's March, 2011 order, but also its February, 2011 and March, 2009 orders. We note that the court's orders clarifying that the plaintiff is entitled to claim offsets for insurance and tax payments were not improper. The 1977 dissolution judgment provides that the plaintiff shall be reimbursed for mortgage and tax payments. Furthermore, the handwritten agreement between the parties provides that mortgage, tax and insurance payments shall be credited as an expense of sale.[12] We conclude that, notwithstanding such entitlement, the express terms of the May,

[11] Specifically, the May, 2007 judgment provides that "the conflicting interests of the parties would be best served by a sale of the premises with the net proceeds being *divided equally* pursuant to the judgment of the court as entered on November 2, 1977." (Emphasis added.)

[12] Although credits for insurance payments are not provided for in the 1977 dissolution judgment, we again look to the terms of the handwritten agreement, which was considered by the trial court without objection, in conjunction with the May, 2007 judgment. We recognize that an agreement between the parties not accepted and approved by the court generally is ineffective to modify a dissolution judgment. See, e.g., *Albrecht* v. *Albrecht,* 19 Conn. App. 146, 151, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d

2007 judgment provide that the plaintiff's entitlement to such credit is equitably offset against the defendant's entitlement to payment for use and occupancy. Accordingly, although the plaintiff is entitled to an offset under the terms of the 1977 judgment of dissolution, he is unable to claim such an offset as a deduction against the sale proceeds of the Lynne Terrace property because the court's May, 2007 judgment determined that such entitlement is itself offset by the defendant's countervailing claim for use and occupancy. Plainly stated, we construe the May, 2007 judgment as providing that the plaintiff's monetary claims relating to the property are cancelled out by the defendant's financial claims relating to the property, leaving both parties to divide equally the net proceeds of sale of the Lynne Terrace property without any further adjustments or offsets for those monetary claims.[13]

## II

The defendant also claims that the court improperly determined that current appraisals, rather than appraisals from the time of the May, 2007 judgment ordering partition and sale, should be used to value the Lynne Terrace property. We determine that the defendant has waived this claim.

---

534 (1989). Here, however, we do not analyze the terms of the handwritten agreement as a means of modifying the dissolution judgment. Rather, we look at the terms of that agreement to clarify the interests of the parties in the Lynne Terrace property equitably balanced by the court in fashioning its May, 2007 judgment in this quiet title action.

[13] The defendant has suggested, both in his appellate brief and at oral argument, that this matter be remanded to the trial court for a sale pursuant to § 52-500 and that, thereafter, the court "hold a hearing to determine the amount of credit [to] be given to the parties respectively . . . ." As noted, under our interpretation of the court's May, 2007 judgment, we determine that the court engaged in an equitable balancing of the parties' respective monetary claims relating to the property, without resorting to an accounting. The court's May, 2007 judgment ordered a sale pursuant to § 52-500. We take no position on the propriety of the court's decision to order a sale of the Lynne Terrace property without resorting to an accounting because neither party properly has raised that issue on appeal.

Both parties agreed at the February, 2011 hearing in this matter that $250,000 was the value to be used for the Lynne Terrace property. This figure split the difference between the appraisal provided by the plaintiff and the 2010 appraisal provided by the defendant.[14] By agreeing to the $250,000 valuation on the record, the defendant has waived his claim that an appraisal as of the date of the May, 2007 judgment should be used to value the Lynne Terrace property. See *Bohonnon Law Firm, LLC* v. *Baxter*, 131 Conn. App. 371, 387, 27 A.3d 384 ("[w]hen a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal" [internal quotation marks omitted]), cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011).

In summary, the court's order providing for the private sale of the defendant's share of the Lynne Terrace property to the plaintiff for $125,000 less offsets for mortgage, tax and insurance payments is reversed. The orders clarifying the plaintiff's entitlement to offsets for mortgage, tax and insurance payments on the Lynne Terrace property are affirmed, but such entitlement is itself offset by the defendant's countervailing claim for use and occupancy. The matter is remanded to the trial court with direction to order an immediate listing of the Lynne Terrace property for public sale at the agreed value of $250,000 and for further proceedings as necessary in accordance with this opinion to effectuate the partition of such property by public sale, the payment of any and all valid encumbrances thereon and valid

---

[14] There were three appraisals before the court: the defendant's appraisal assigning a value to the property as of the date of the 2007 judgment, the defendant's appraisal assigning a value to the property as of the date of her 2010 appraisal and the plaintiff's appraisal assigning a value to the property as of the date of his 2010 appraisal. Once the court determined that the 2010 appraised values of the property would be considered, counsel for both parties agreed to the figure of $250,000, which was the midpoint between each party's 2010 appraised value.

expenses relating to such sale, and the equal division and distribution of the net proceeds therefrom.

The judgment is reversed in part and affirmed in part, and the case is remanded for further proceedings in accordance with the preceding paragraph.

In this opinion the other judges concurred.